IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WARREN COLEMAN and THERESA COLEMAN, Individually and as Parents, Natural Guardians, and Next Friends of MORGAN ALEXIS COLEMAN, a Minor,<br><br>       Plaintiffs,<br><br>v.<br><br>CLASSIC CENTER AUTHORITY FOR CLARKE COUNTY and OTIS ELEVATOR COMPANY,<br><br>       Defendants. | 1:06-cv-2947-WSD |

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs Motion to Remand [9].

**I. BACKGROUND**

On April 22, 2006, Morgan Alexis Coleman visited the Classic Center building in Clarke County, Georgia. Coleman, through her parents as Next Friends, (collectively, "the Colemans"), alleges that she was seriously injured by a piece of metal protruding from the side of an escalator in the Classic Center building. On October 26, 2006, the Colemans filed suit in the Superior Court of

Fulton County asserting claims of negligence and nuisance.  The Colemans sued the Classic Center Authority ("CCA"), the government body alleged to be responsible for operating and maintaining the Classic Center building, and Otis Elevator Company ("Otis"), alleged to be responsible for maintaining the escalators in the Classic Center building.  On December 4, 2006, Otis removed the action to this Court on the grounds of diversity jurisdiction under 28 U.S.C. § 1332(a).

The Colemans are residents of Georgia.  The parties do not dispute that Otis is a New Jersey corporation with its principal place of business in Connecticut.  The CCA is a government authority created by Georgia law and associated with Athens-Clarke County.  There is no dispute that the Colemans are diverse from Otis, but not from the CCA.

Otis, in its notice of removal, claimed that the Colemans had fraudulently joined the CCA for the purpose of defeating federal jurisdiction.  The Colemans filed the present Motion to Remand, disputing that the CCA was fraudulently joined.

## II.   DISCUSSION

### A.   Removal and Fraudulent Joinder

The Court must, as a general matter, remand a case if the technical requirements of removal have not been met.  See Russell Corp. v. American Home Assur. Co., 264 F.3d 1040, 1044 (11th Cir. 2001).  The removing defendants carry the burden to demonstrate that the removal was effected properly, and "this burden is a heavy one." Lampkin v. Media General, Inc., 302 F. Supp.2d 1293, 1294 (M.D.Ala. 2004).  Removal statutes are strictly construed in favor of state court jurisdiction.  Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941).

Otis claims that this Court has diversity jurisdiction under 28 U.S.C. § 1332. Section 1332 provides for "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). "Diversity jurisdiction, as a general rule, requires complete diversity -- every plaintiff must be diverse from every defendant." Palmer v. Hosp. Auth. of Randolph County, 22 F.3d 1559, 1564 (11th Cir. 1994).

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). That is, a plaintiff cannot join non-diverse defendants to an action solely to preclude the jurisdiction of a federal court. If the Court finds that certain defendants have been fraudulently joined, the Court overlooks the citizenship of those defendants when evaluating whether federal jurisdiction exists. Crowe v. Coleman, 113 F.3d 1536, 1539 (11th Cir. 1997).

The removing party has a "heavy" burden of proving fraudulent joinder. Id. at 1538. "In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." Id. The Court must base its decision on the plaintiff's pleadings at the time of removal, although the Court may also consider supplementary affidavits later submitted by the parties. Legg v. Wyeth, 428 F.3d 1317, 1323 (11th Cir. 2005).

When determining whether non-diverse defendants have been joined fraudulently, the Court must evaluate the factual allegations in the light most

favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of plaintiff.  Crowe, 113 F.3d at 1538.  "[A]fter drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be a reasonable basis for predicting that the state law *might* impose liability on the facts involved." Id. at 1541-42 (citation and quotation omitted).  "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Id. at 1538 (quotation and citation omitted).

     The Court must operate with unique deference to how a state court might interpret state law when evaluating fraudulent joinder claims.

> In the usual diversity situation a Federal Court, no matter how difficult the task, must ascertain (and then apply) what the state law is . . .. But here the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham, is not colorable and is not fraudulent in fact or in law.

Bobby Jones Garden Apartments, Inc. v. Sueleski, 391 F.2d 172, 176-77 (5th Cir. 1968).[1]

B. Immunity

The Court's analysis comprises one issue: whether it is so certain that the CCA is immune from the claims asserted in this case that there is no possibility the Colemans can establish a cause of action against it. The Court finds that it is not.

The parties do not dispute that the question of CCA's immunity is not clearly answered by existing Georgia law. The Georgia Constitution provides sovereign immunity for "the state and all of its departments and agencies." Ga. Const. of 1983, Art. 1, § 2, ¶ IX. Whether the CCA is a department or agency of the state of Georgia is, however, unclear.

The CCA was created from local legislation enacted by the General Assembly of Georgia in 1988. The local legislation declared that "[t]here is a body corporate and politic to be known as the Classic Center Authority for Clarke County, which shall be deemed to be a political subdivision of the State of Georgia and a public corporation. . . ." 1988 Georgia Laws p. 3977, § (a)(1). The CCA is

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent Fifth Circuit decisions rendered prior to October 1, 1981.

registered as a local authority pursuant to O.C.G.A. § 36-80-16.  According to that statute, a "local government authority" includes "instrumentalities of one or more local governments created to fulfill a specialized public purpose or any other legally created organization that has authority to issue debt for a public purpose independent of a county or municipality, not to include state authorities."  Id.

The CCA consists of five members appointed by Athens-Clarke County, Georgia.  The CCA allegedly has statutory authority to purchase property, to contract with public or private entities, to issue revenue bonds, and to exercise other powers typically possessed by private corporations.  The CCA appears to be the lessee of the Classic Center building for a term of 50 years, under a lease from Athens-Clarke County that specifies that the building is to be used for community-related events.[2]  The lease is alleged to vest the CCA with the sole responsibility to repair and maintain the Classic Center building.  The CCA is alleged to have its own budget.

No Georgia court has stated clearly under what circumstances a local authority, designated as a "political subdivision" in its enacting legislation and not

---

[2] The Defendants do not contend that the CCA's status as a lessee relieves it of liability for harm caused through negligence or nuisance in the Classic Center building.

specifically granted sovereign immunity, constitutes a department or agency of the state entitled to sovereign immunity. Georgia's statutory law defines the "state" as "the State of Georgia and any of its offices, agencies, authorities, departments, commissions, boards, divisions, instrumentalities, and institutions, but does not include counties, municipalities, school districts, other units of local government, hospital authorities, or housing and other local authorities."
O.C.G.A. § 50-21-22(5).

    Reasonable conclusions on either side of the issue can be drawn from the current case law. In Gilbert v. Richardson, 452 S.E.2d 476 (Ga. 1994), the Georgia Supreme Court held that Georgia counties, even though they are not technically "departments or agencies" of the State of Georgia, fall within the scope of the immunity Amendment. Id. at 479. By contrast, in City of Thomaston v. Bridges, 439 S.E.2d 906 (Ga. 1994), the Georgia Supreme Court held that municipalities do not fall within the terms of the immunity statute, even though they are clearly political subdivisions of the state of Georgia, because the "obvious intent" of the Amendment was to exclude municipalities. Id. at 909.

    The Court has found two cases particularly instructive. In Holmes v. Chatham Area Transit Authority, 505 S.E.2d 225 (Ga. 1998), the Georgia Supreme

Court held that a transit authority, expressly identified as an "instrumentality of the State of Georgia" in its local enacting legislation, was not in fact an instrumentality of the state. The court held that because the transit authority was registered as a "local authority," and served local rather than state interests, it was not an instrumentality, but a local authority falling into the statutory exclusion from the definition of the "state" in O.C.G.A. § 50-21-22(5). The court reasoned that the transit authority's designation as an "instrumentality of the state" did not necessarily make it so. The Court reasoned that the legislation referring to the transit authority as an "instrumentality of the state" did not really mean "instrumentality," but that the term was only "loosely used to mean that CATA was a public entity entitled to claim many [but not all] of the benefits typically reserved to . . . other recognized political subdivisions of the state." Id. at 227.

In Thomas v. Hospital Authority of Clarke County, 440 S.E.2d 195 (Ga. 1994), the Georgia Supreme Court held that "the Hospital Authority is not the state, or a department or agency of the state." Id. at 195. The Georgia Supreme Court noted that it applies "a narrow definition in determining what constitutes the state or a political division thereof, distinguishing the state and its political subdivisions from instrumentalities created by the state to carry out various

functions." Id. at 196. The court's determination focused on the fact that the Hospital Authority acted like a private corporation, and did not have "those powers which are generally inherent in the concept of a political subdivision." Id. The court held that, for immunity purposes, "it is irrelevant that the hospital authority is an instrumentality created by a department or agency of the state." Id.

There is a reasonable basis to conclude that Georgia courts might impose liability on the CCA on these facts. Georgia courts could find that the CCA's identification as a "political subdivision" in its enacting legislation is the end of the matter, and that the CCA is immune from suit. A Georgia court could just as reasonably be expected to find that, regardless of the use of the term "political subdivision" in the enacting legislation, the CCA is not a "political subdivision" for immunity purposes because its purpose is inherently local, it is registered as a local government authority, its function is similar to a private corporation, and it does not have those powers generally inherent in the concept of a political subdivision. Thus, under the rationale of Holmes and Thomas, the CCA would not be immune from suit.[3]

---

[3] Should it be determined that the CCA is immune from suit, it appears that it might have waived its immunity. It is undisputed that the CCA has purchased GIRMA liability insurance. The Supreme Court of Georgia "has repeatedly held

The Court's duty to remand this case is clear. The CCA's status as a "department or agency" of the State of Georgia is at least an open question, and is best determined by a Georgia state court. The defendants seeking removal through a theory of fraudulent joinder bear the heavy burden of showing that there is no possibility that the Colemans' claim against the CCA can succeed. The Defendants have failed to do so here.

### III.   CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand [9] is **GRANTED**. The Clerk of Court is **DIRECTED** to **REMAND** this action to the Superior Court of Fulton County, Georgia.

**SO ORDERED** this 2nd day of March, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

that liability insurance protection purchased or created by a governmental entity to insure against its own liability waives that entity's sovereign immunity." Gilbert, 452 S.E.2d at 481.